BLACK AND BURKE *against* THE MARINE INSURANCE COMPANY.

THIS was an action upon a policy of insurance, on the brig *Resort*, dated 1st *September*, 1809, on a voyage from *New-York* to *Bremen*, or a port of discharge in the *North Sea* or *Baltic*. At the foot of the policy there was the following written clause : " This insurance is against capture only; warranted by the assured *American* property, (proof whereof to be required here only,) and not to abandon in case of capture or detention, until six months after advice thereof is received at this office, or until after condemnation, and not to abandon in consequence of blockade, but the assured to have permission to proceed to another port not blockaded. *Also free from seizure* in any river, port, or place, under the jurisdiction of *Napoleon*, or under the jurisdiction of any power under his control, or in alliance with him."

The vessel sailed on the voyage insured, on the 24th of *June*, 1809, and on the 2d of *August* following arrived off the coast of *Holland*, with intent to put into *Amsterdam*, which port was open; and having arrived within the first buoy, and within a marine league from the *Dutch* coast, and at the distance of about eleven miles from the entrance into the *Texel* roads, she was, while sailing along the coast, towards the *Texel*, captured by two *French* privateers, the *Hebe* and the *Tilsit*, and carried into the port of *Amsterdam*, as a prize of war. The captors carried the ship's papers to the *French* consul at *Amsterdam*, who transmitted them, together with certain proceedings had before him, in relation to the capture, to the imperial council of prizes at *Paris*, where the captors proceeded against the vessel as prize of war. A claim was put in by the captain, among other things,

Insurance from *New-York* to seamen or a port of discharge in the *North Sea* or *Baltic*, "against capture only" Warranted "free from seizure in any river, port, or place, under the jurisdiction of *Napoleon*, or under the jurisdiction of any power under his control, or in alliance with him." The vessel intending to put into *Amsterdam*, arrived within the first buoy, or within a marine league from the *Dutch* coast, and at the distance of about 11 miles from the entrance into the *Texel* roads, where she was captured by two *French* privateers, and carried into *Amsterdam*, as prize of war, and the ship's papers were transmitted by the *French* consul to the imperial court of prizes at *Paris*, where the captors

proceeded against the vessel, as prize of war, and the court condemned her as good prize of war.
   The cause of condemnation was a violation of the *Berlin* and *Milan* decrees, in not having a certificate of origin. It was held to be a seizure within the warranty.

NEWYORK, denying the jurisdiction of the court, which, however, was re-
August, 1814. jected, and the court proceeded to entertain jurisdiction; and
BLACK        on the 28th of *February*, 1810, condemned the vessel, as good
v.           prize of war to the captors. The vessel was taken within the
MAR. INS. CO.
             first buoy, and between that and the second buoy, and in the track
usually pursued by vessels entering the *Texel*.

It was agreed, that the jury should find, whether *Holland*, at
that time, was in alliance with, or under the jurisdiction or con-
trol of, *Napoleon*, and whether the capture was within the juris-
diction of *Holland*; and that if.they should find for the defend-
ants, the question, whether the capture was a seizure within the
meaning of the written clause of the policy, was reserved for the
opinion of the supreme court. The jury found for the defendants
on the points submitted to them; and if the court, on the point
reserved, should be of opinion for the plaintiffs, then the verdict
to be entered in their favour for such sum as shall be ascertain-
ed to.be due to them, on a reference for that purpose to persons
named, to whom the adjustment of the amount was, in such case,
agreed to be referred; and if the court should be of opinion for
the defendants, then the present verdict was to stand.

*Slosson*, for the plaintiffs. The question is whether there was
a capture of the vessel, or a seizure within the meaning of the
clause in the policy. . She was captured in the open sea, about
11 miles from the *Texel* roads, but within the maritime jurisdic-
tion of *Holland*, according to the law of nations. The place
of capture was not a port or river, though a place within the
jurisdiction or under the control of *Napoleon*.

*Capture* and *seizure* are not always convertible terms, but one
has a different meaning from the other. Capture is a word of
known *technical* signification, and is understood to be a taking
of property *jure belli*, by an enemy in open war, or by way
of reprisal, with intent to deprive the owner of it.[*] It is an
act done with a hostile intention. A seizure, arrest, or deten-
tion, is not a hostile act; it is not done with any view to de-
prive the owner of his property. It is not an *act of war*.[†] In
*Matthie* and *Potts*,[‡] this distinction is adopted and made the
ground of decision by the court.

It may, perhaps, be said that by the word *seizure*, the insurers
meant *capture*.

It is true that the intent and meaning of the parties to the in-

[*] *Marshall on Ins.* 495. B. 1. c. 12. s. 4. 2 *Azuni's Mar. Law*, 221. p. 2. c. 4. a. 1. 1 *Emerig. sur Assu.* 440. c.12. s. 18.
[†] 2 *Valin*, 120, 121. *Consult. de M. Emerig.*
[‡] 3 *B. & P.* 23.

...rument is to be looked to; and the written clause is to con-trol the printed words. But there is nothing in the written clause here which can control or vary the printed words. The language shows that the insurers understood the distinction for which we contend. The insurance is against *capture* only; warranted not to abandon in case of *capture* or *detention,* until after six months, nor in consequence of *blockade.* Then what is the meaning of the latter part of the clause, " free *from seizure* in any river, port or place," &c.? It is, no doubt, meant to exempt the insurers from *land-risks*; it was intended to guard against a seizure by land, or by the governing power of the country to which the vessel was bound. The seizure intended is an act by a power set in motion from the land, or by the ruling power of the country.

In *Jarman* v. *Coape,** the insurance was " free of capture or seizure in the port or ports of discharge;" and the court held the clear intention to be, to exempt the insurers from *land-risks.*

In *Baring* v. *Vaux,†* a ship was warranted free from capture in port, and it was held that it did not protect the underwriters from any loss happening by capture in a place not within the limits of a *port.* So in *Brown* v. *Tierney,‡* where the ship was warranted free of capture in port, a capture while lying in an open road, outside of a harbour, was held not to be within the warranty.

Should it be said that the capture was not legal, because within the jurisdiction of a neutral power, it may be answered, that the insurance is against illegal as well as legal captures. Besides, the capture, as it respects the party taken within the neutral jurisdiction, is legal, unless the neutral government complains. The objection as to the legality of the capture, is to be made by the neutral only whose jurisdiction has been violated.§

*Colden,* contra. The capture in this case was clearly within the maritime jurisdiction of *Holland.*|| It is found, by the verdict of the jury, that the capture was within the jurisdiction of *Holland,* and that *Holland* was under the control of *Bonaparte.* We admit the distinction laid down between capture and seizure or arrest; and we insist that this was not a capture *jure belli,* or because it was enemy's property, or because it be-

* 13 *East,* 394,

† 2 *Campb. N. P. Cases,* 541.

‡ 1 *Taunt. Rep.* 517.

§ 3 *Rob. Adm. Rep.* 162. *Twee Gebroeders.*

|| 2 *Cranch's Rep.* 187—220. *Church* v. *Hubbard.*

ALBANY, longed to a neutral violating the law of nations. The cause of
August, 1814. seizure, as stated in the *proceedings* of the *French* court, is that
the vessel was sailing to a *French* port, without having a *certifi-*
BLACK *cate of origin*, in violation of the *Berlin* and *Milan* decrees.
v. Those decrees were municipal regulations. They form no part
MAR. INS. CO.
of the law of nations.

The seizure was within the jurisdiction of the country, and
by virtue of municipal regulations enforced in the country.
That it was made by a vessel of war can make no difference;
for vessels of war are authorized to seize for a violation of the
revenue laws.

In *Jerman* v. *Coape* and *Baring* v. *Vaux*, the insurers were held
not to be liable for seizures in a *port* or *ports*. Here the words
are far more extensive. The intention was to exempt from
capture in certain places or situations. It is an exception of a
part of the risk before assumed, or from the general words,
" capture only." It has reference to place; that is, the insu-
rance is against capture only, except in any river, port, or
place, &c.

There is no occasion to resort to any distinction as to the
rules of construction between printed and written clauses; for
here the general clause and the exception are both written, and
the rule of construction must be precisely the same as that of
any written contract.

*T. A. Emmett*, in reply, said the two clauses were distinct.
The exception is put in for the benefit of the insurers, and if.
there is any inconsistency, they must take the consequences of
it. In construing such occasional clauses, it is usual to inquire
by whom they were introduced; and if the party introducing
them might have explained himself clearly and explicitly, his
not doing so ought not to afford him an occasion to impose re-
strictions upon the other party, which he has not distinctly ex-
* *Marsh. on* pressed.*
*Ins.* 305. B. 1.
c. 8. s. 3. We insist that this is a capture *jure belli*, as *prize of war*. The
proceedings were in the *imperial council of prizes* at *Paris*.
The condemnation in that court was as prize of war. The
*captors* were *French privateers;* the *court* was a *prize* court;
the cause of condemnation was a violation of the *Berlin* and

*Milan* decrees, which declare a vessel, in such a situation, *de- nationalized*, as having lost her original national character, and as being *British* or enemy's property. It was not a condemnation for a violation of a mere municipal regulation, otherwise the proceedings and condemnation would have been in *Holland*. If any municipal law or ordinance was violated, it was that of *Holland*, and there would be the place of condemnation.

It was, emphatically, against *illegal* captures that this insurance was made. At that time, in 1809, no power on earth could *legally* capture *American* property; and it was to protect themselves against illegal captures and seizures, not warranted by the law of nations, that the plaintiffs caused this policy to be effected.

The clause being introduced for the benefit of the insurers, they cannot take advantage of any inconsistency or contradiction between it and the other parts of the policy, so as to vary the meaning of the words used. They cannot make it a trap or drag-net for the insured.

The last written clause has no more reference to the first written clause, than it has to any of the printed parts of the policy.

Though the jury may have found the capture to have been within the jurisdiction of the country, in one sense, it is for this court to decide whether the place of capture was within the jurisdiction of *Holland*, in the sense and meaning of the policy.

Though the supreme court of the *United States* may have adopted a marine league from the shore, as the extent of territorial jurisdiction, yet no court, in any country in *Europe*, has adopted the same rule.

THOMPSON, Ch. J. delivered the opinion of the court. This is an insurance on the brig *Resort*, on a voyage from *New-York* to *Bremen*, or a port of discharge in the *North Sea* or *Baltic*, against *capture* only. The policy, among other warranties, contained the following: " Also *free from seizure* in any port or place under the jurisdiction of *Napoleon*, or under the jurisdiction of any power under his control or in alliance with him." The brig was taken on the coast of *Holland*, by two *French* privateers, and carried into the port of *Amsterdam*, and

was afterwards condemned by the imperial council of prizes at Paris, as prize of war. The jury found that the capture was within the jurisdiction of Holland, and that Holland was, at the time, in alliance with, or under the control or jurisdiction of Napoleon, and the question for the court is, as to the meaning of the exception "free from seizure," &c.

The exception was intended for the benefit of the underwriters, and in order to give it any effect, must be so construed as to restrict the risk assumed by the general words of the policy. The insurance being against capture only, any exception out of that risk must have been intended to extend to some peril which would have fallen under the denomination of capture; otherwise, the exception is senseless. The underwriters did not assume the risk of seizure for breach of any municipal regulations. It would, therefore, be giving no effect to the exception to limit it to such risk. It is, no doubt, a sound rule of construction, that terms made use of in contracts are to be understood in their plain, ordinary, and popular sense; unless the context evidently requires, in order to effectuate the intention of the parties, that they should be understood in some other special and peculiar sense. Seizure may, in general, be applicable to a taking or detention, for the violation of some municipal regulation; but where such meaning cannot be given to it, consistent with the obvious sense and understanding of the parties, it is no violation of any settled rule or principle of law, to give it some other interpretation, better comporting with the fair intention of the parties. The underwriters did not mean to assume any risk except that of capture, and not even that, if made in any river, port, or place under the jurisdiction of Napoleon, or under the jurisdiction of any power under his control, or in alliance with him.

It is no strained interpretation of the term seizure to consider it as synonymous with capture; and then the underwriters, although they assume the risk of capture generally, exempt themselves even from that risk, if the capture is made under any of the circumstances mentioned in the warranty. In no other way can any rational interpretation be given to the clause; and the jury having found that the seizure or capture was, in fact, within the exception as to place, the underwriters cannot be made re-

sponsible for the loss. Judgment must, accordingly, be for the defendants.

ALBANY,
August, 1814.

Judgment for the defendants. (a)

FONTAINE
v.
PHŒNIX INS.C°.

(a) In *Dagleish and others v. Brooke*, (15 *East's Rep.* 294.) the goods were warranted " free from capture or seizure in the ship's port or ports of discharge." The ship arrived in the outer road of *Pillau*, which is a bar harbour, where large ships, like the one mentioned in the policy, are obliged to discharge part of their cargoes into lighters, in order to go over the bar into the inner harbour, where the remainder is discharged ; and the captain having anchored two miles and a quarter further out than ships usually lie for that purpose, which difference was decided by the jury to be immaterial, he went on shore to obtain permission to discharge his cargo, and returned in five or six days, in company with some *Prussian* soldiers and a pilot, who took possession of the ship and cargo, which was afterward confiscated; this was held to be an arrival at the elected *port* of discharge, and a *seizure* there within the meaning of the warranty, so as to discharge the insurers from the loss.